**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ALEXSAM, INC., *Plaintiff*, v. SIMON PROPERTY GROUP (TEXAS), L.P., BLACKHAWK NETWORK, INC., ET. AL., *Defendants*. | § § § § § § § § § | Case No. 2:19-cv-00331-ALM-RSP |

**MEMORANDUM ORDER**

Before the Court are two motions: Defendant Simon Property Group (Texas), L.P.'s ("Simon") Motion for Attorneys' Fees and Costs (**Dkt. No. 444**) and Defendant Blackhawk Network Inc.'s ("Blackhawk") Motion for Fees and Sanctions (**Dkt. No. 447**). In the motions, each Defendant argues that Plaintiff AlexSam Inc's positions regarding U.S. Patent No. 6,000,608 (the "'608 Patent") warrant sanctions under 35 U.S.C. § 285, 28 U.S.C. § 1927, FED. R. CIV. P. 11, and the "Court's inherent power," because they are "exceptional" and "unreasonably and vexatiously" multiplied the proceedings. Dkt. No. 444 at 1. Having considered the Motions, and for the reasons discussed below, the motions are **GRANTED**.

## I. BACKGROUND

### A. The '608 Patent

The '608 Patent, titled "multifunction card system," claims a "card system which provides a multifunction card capable of serving as a prepaid phone card, a debit card, a loyalty card, and a medical information card." The '608 Patent includes a central processing hub to "coordinate" the various information sources. The '608 Patent contains both system and method claims.

### B. *Simon* and *Blackhawk* Litigation

Plaintiff's Third Amended Complaint[1] accuses Simon of infringing claims 34, 35, 36, 37, 38, 39, 44, 45, 60, 62, 63, 65, and 66 of the '608 Patent through its "Simon Visa Gift Card…Simon AmEx Gift Card, and…Simon Loyalty Card," along with "substantially similar products." Dkt. No. 206 at ⁋ 153. Plaintiff also accuses Blackhawk and Simon of jointly infringing claims 34, 36, 37, 38, 39, 44, 45, 60, 62, 63, 65 and 66 of the '608 Patent, through contractual agreements that administered the "Simon Visa Gift Card and…Loyalty Card." *Id.* at ⁋ 176. Finally, Plaintiff accuses Blackhawk of infringing claims 34, 36, 37, 38, 39, 44, 60, 61, 62, 63, and 65 of the '608 Patent through its own gift card network. *Id.* at ⁋ 189.

Claims 34 and 60 are independent; claims 35-49 are the dependent claims of claim 34 and claims 61-66 are the dependent claims of claim 60. Both claims 34 and 60 require "an ***unmodified*** existing standard [retail] point-of-sale device." The Court granted summary judgment of non-infringement and rejected Plaintiff's attempts to limit the prior *agreed* construction of "unmodified" to modification to *practice the patent*, rather than the Court's prior construction, which construed "unmodified" to mean that the accused system was not modified for "use in the card system."[2] In its opposition to Defendants' non-infringement summary judgment motion, Plaintiff lists 13 modifications to a point of sale device that ostensibly do not require modification of the "card system."[3] *See* Dkt. No. 334 at 22-23.

---

[1] Plaintiff's original complaint, along with its First, Second and Third amended complaints accuse Simon and Blackhawk of infringing the same claims of the '608 Patent. *See* Dkt. Nos . 1, 12, 90, 206.

[2] The term "unmodified" was previously construed by the Court. *See AlexSam, Inc. v. Datastream Card Servs. Ltd.*, 2005 WL 6220095, at *5 (E.D. Tex. June 10, 2005) ("The court therefore construes the term 'unmodified existing standard POS device' to mean 'a terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for ***use in the card system***.'").

[3] The 13 modifications are: "(i) activating a card at a POS device; (ii) identifying a gift card at a POS device; (iii) recognizing different BIN / PRIN numbers at a POS device; (iv) automatically identifying if a gift card is a fixed or variable amount card; (v) configuring menus to sell or activate cards; (vi) changes for routing transactions; configuring the format of a PAN number; (vii) categorizing gift card purchase as "non-merch"; (viii) configuring a POS terminal

### C. Prior Litigation

#### *1. Gap Litigation*

Defendants assert that prior litigation has found certain claims of the ’608 Patent invalid. *See AlexSam, Inc. v. Gap, Inc.*, 621 F. App'x 983 (Fed. Cir. 2015). In *Gap*, the District Court split Defendants’ validity counterclaims and Plaintiff’s infringement claims into separate trials; the validity trial proceeded first. At the invalidity trial, the District Court denied Defendants’ JMOL for invalidity of claims 1, 34, 36, 37, 57, 58, 60, 62 and 65 of the ’608 Patent. *Id.* at 987. Prior to the infringement trial, Plaintiff dropped all infringement accusations of the ’608 Patent. The jury found the remaining patent, No. 6,189,787, not infringed. *Id.* The Parties filed cross-appeals. *Id.* The Federal Circuit reversed the District Court and held those claims invalid under § 102. *See Id.* at 995; Dkt. No. 262 at 4.

AlexSam then sought review from the Supreme Court. AlexSam argued that the Federal Circuit lacked jurisdiction to hear the invalidity appeal, because the ’608 Patent was dropped between the invalidity and infringement trial. The Supreme Court denied AlexSam’s *certiorari* petition. *See* 577 U.S. 1140 (2016).

#### *2. IDT Litigation*

The Federal Circuit has endorsed the Court’s prior construction of the term “unmodified.” *See AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013). In *IDT*, the Federal Circuit found that to infringe the ’608 Patent, the accused payment terminals must be “unmodified” for use in the card system. *Id.* at 1341 (“AlexSam needed to prove…that those terminals ‘ha[d] not been *reprogrammed, customized, or otherwise altered with respect to [their] software* ... for use in the

for an EFT transfer; (ix) configuring a POS system communication interface; (x) modifying the POS device to store gift card data; (xi) configuring host to host software; (xii) enabling two-step activation; and (xiii) configuring a POS device to recognize or scan bar codes.” Dkt. No. 334 at 23.

card system.'"). The Federal Circuit concluded that because AlexSam failed to offer any evidence that the accused terminals had not been modified for use in the card system, the District Court erred in denying Defendants' non-infringement JMOL. *Id.* at 1342.

## II. <u>LEGAL STANDARD</u>

### A. 35 U.S.C. § 285

A district court "may award reasonable attorney fees to the prevailing party" if the case is "exceptional." 35 U.S.C. § 285.[4] A case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

"[C]ourts contemplating an award of attorney's fees should consider the totality of the circumstances in the case." *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J., sitting by designation) (citing *id.*). "The totality of the circumstances standard is not, however, an invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees." *Id*. "[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith." *Id*. at *4 (citing *Octane*, 572 U.S. at 548).

Whether a case is exceptional is within the sound discretion of the district court. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). The Supreme Court and Federal Circuit have recognized that it is "the district court . . . that lives with the case over a prolonged period of time" and as such, "is better positioned to decide if the case is exceptional." *Id*. (internal

[4] The '608 Patent was issued pre-AIA, however § 285 is unchanged post-AIA.

quotation marks and citation omitted); *see also Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 953 (Fed. Cir. 2010) (expressing "reluctance to second-guess the judgment of trial judges who typically have intimate knowledge of the case").

## III. **ANALYSIS**

The Court finds that Plaintiff's litigation conduct is exceptional and warrants fees under 35 U.S.C. § 285 from the date Plaintiff's initial complaint was filed. There is a reasonable argument that the "608 Patent has been conclusively determined to be invalid in the *Gap* case addressed above. However, Plaintiff argues that the Federal Circuit lacked subject matter jurisdiction to hear that appeal. Dkt. No. 457 at 10. Defendants respond that, in *Gap*, AlexSam failed to raise the subject matter jurisdiction issue upon appeal to the Federal Circuit. Instead, AlexSam first raised the issue in their unsuccessful *certiorari* petition filed with the Supreme Court. Certainly, filing a new lawsuit asserting a patent already held invalid would be exceptional litigation conduct. However, the Court need not resolve the appellate jurisdiction issue. The infringement position in this case, viewed in the context of the entire case, is entirely exceptional even if the '608 Patent has not been invalidated.

The Court has detailed the tortured application of the claim construction relied upon by Plaintiff in opposing the motions for summary judgment filed by each of the Defendants. *See Report and Recommendation* (Dkt. No. 417) (Nov. 15, 2021). All of the asserted claims in this case depend from one of two independent claims, both of which contain the term "unmodified existing standard [retail] point-of-sale device."[5] That term was construed in earlier litigation as: "a terminal, for making purchases [at a retail location], that is of the type in use as of July10, 1997,

[5] Independent Claim 34 has the word "retail", while Independent Claim 60 does not.

and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." Importantly, this construction was agreed to by AlexSam at the outset of this case, long before claim construction, long before the summary judgment motions. *See* Joint Claim Construction and Prehearing Statement (Dkt. No. 202 at 3-4) (April 30, 2021). This construction was not a surprise imposed upon Plaintiff by the Court.

Equally important is the fact that the Federal Circuit had already opined on the type of evidence that would be necessary to meet this limitation. In 2013, in the *IDT* case, the Court addressed AlexSam's theory that it could meet the limitation by showing that no modifications to the POS device were *necessary*, as opposed to showing that no modifications had been made:

> "At no point did Baker testify, except in the cursory manner described above, that no modifications were actually made to the terminals' software in order to allow them to activate IDT's cards …. AlexSam's other witness, Brent Hranicky, testified that no modifications were 'necessary' to allow a standard POS terminal to read an IDT card, and that terminals in use in 1997 could perform 'the same basic functions for use in a card system that are performed by point-of-sale devices today …. We conclude that AlexSam failed to present substantial evidence that the terminal used in IDT's Walgreens and EWI systems 'had not been reprogrammed, customized, or otherwise altered with respect to [their] software … for use in the card system.'"

*AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1341-42 (Fed. Cir. 2013). Plaintiff argues, in response to these motions, that it understood the Federal Circuit to be criticizing it's expert's testimony. So it intended in this case to make a different showing. However, after reviewing the Report and Recommendation on the summary judgment motions, and all objections thereto, Judge Schroeder found that "While Zatkovich may have elicited further testimony, technical details and specifications in support of AlexSam's infringement position, the R&R properly determined that the evidentiary materials marshalled here are indistinguishable from that deemed insufficient in *IDT*." (Dkt. No. 440 at 5).

As was noted in the Report and Recommendation, AlexSam's argued understanding of the construction would require "at least a closed system that required single-function dedicated hardware" in order to be a modified system excluded from coverage. (Dkt. No. 417 at 8). The result would be that "if the card works with a POS device then the system is 'unmodified.'" (*Id*. at 12). Nothing in the intrinsic record of the '608 Patent, in any of the extensive litigation surrounding it, or in the record of this case, makes such an understanding in any way reasonable.

**A. Fees**

In its Motion, Defendant Simon requests their entire defense cost of $1.8 million: $100,000 from expert fees, $30,000 from an e-discovery vendor, and the remainder in attorneys' fees. Dkt. No. 444 at 15. Simon identifies several cases where similar awards were found based on analogous "exceptional" litigation conduct and provides several exhibits that support their hourly rates. *Id.* Defendant Blackhawk requests $1,340,628.80 in attorney's fees, and $95,609.49 in expert fees ($1,436,238.29 total). Dkt. No. 447 at 15.

"It is well established that district courts have "considerable discretion" to determine the amount of reasonable attorney fees under § 285." *Drop Stop LLC v. Jian Qing Zhu*, 757 F. App'x 994, 999 (Fed. Cir. 2019). This discretion is grounded in the "district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.*

The Court has found that Plaintiff's litigation conduct was "exceptional" under 35 U.S.C. § 285, for all claims of the '608 patent since filing. The Court intends to award all attorney fees and expenses reasonably incurred in defending this action. However, Defendants have not provided the Court with the necessary evidence or stipulation to make that award. Accordingly,

**IT IS ORDERED** that Defendants are directed to provide a detailed accounting of their fees to counsel for Plaintiff within 30 days, and to confer thereafter between counsel in an effort to reach agreement. If no agreement is reached, the Defendants are directed to file a motion to fix fees within 30 days thereafter, attaching the evidence supporting their fee request. Plaintiff will be allowed 14 days to file any opposition, with Defendants to file any reply within 7 days thereafter.

## IV. CONCLUSION

Having considered the motions, and for the reasons discussed above, the motions are **GRANTED**. Barring settlement, Defendants shall proceed as directed above to fix the fees.

**SIGNED this 16th day of September, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE